UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JUSTINE ROSENFELD, parent and next friend to M.R., : : | |
| Petitioner, : | |
| v. : | C.A. No. 13-222S |
| : | |
| NORTH KINGSTOWN SCHOOL DEPARTMENT, : : | |
| Respondent. : | |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

  Petitioner Justine Rosenfeld, as parent and next friend to her minor son, M.R., brought this Petition in the Providence County Superior Court to enforce an Interim Order of the Rhode Island Commissioner of Education ("Commissioner") requiring Respondent North Kingstown School Department ("School Department") to comply with M.R.'s Individualized Education Plan ("IEP") until her due process complaint under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400(a), 1415(f), is determined. The School Department timely removed the Petition to this Court on April 5, 2013. Petitioner moves to remand, arguing that, because her "stay-put" order was procured through an administrative procedure created by state law for the purpose of enforcing federal education law, R.I. Gen. Laws § 16-39-3.2, it is outside of the IDEA due process structure, this Court lacks subject matter jurisdiction and the case should be remanded. A hearing on the Motion was held on April 18, 2013.

  It is clear that enforcement of the Interim Order presents an issue that arises under the IDEA, a federal statute that specifically provides that "[t]he district courts of the United States shall have jurisdiction of actions brought under this section." 20 U.S.C. § 1415(i)(3)(A).

1

Therefore, this Court has jurisdiction to enforce the Interim Order's mandate that the School Department must comply with M.R.'s IEP during the pendency of the due process complaint. I recommend that Petitioner's Motion for Remand (ECF No. 2)[1] be DENIED.

## I.   FACTS AND PROCEDURAL HISTORY

M.R. is a sixteen-year-old student in the eleventh grade who suffers from autism, mental retardation, episodic mood disorder and obesity. He has limited mastery of a variety of functional living skills, including toileting. M.R. has not acquired the skill of cleaning himself after a bowel movement and requires assistance. As a result of his disabilities, the School Department delivers special education services to M.R. in a self-contained classroom under a federally-mandated IEP with a one-on-one personal care attendant. M.R.'s current IEP requires the School Department to "[m]onitor hygiene in the bathroom." The interpretation of that IEP requirement is at the core of this dispute; Petitioner contends that it requires that the School Department's staff must inspect M.R.'s buttocks after he has attempted to clean himself and wipe him if he is not clean.

Petitioner's troubles with the School Department began during the 2011-2012 school year when M.R.'s toileting problems increased sharply. The situation improved briefly with a new personal care attendant but worsened during the 2012-2013 school year. Concerned by M.R.'s history of needing treatment for e coli as a result of inadequate attention to toileting, Petitioner met with the School Department in October 2012 and January 2013, without success. At a final meeting on February 28, 2013, the School Department took the position "that in a public school

---

[1] In the alternative, Petitioner's Motion seeks an order of this Court enforcing the Interim Order. While Petitioner requested expedited treatment for this alternative Motion, at the hearing, it became clear that there was no emergency. Accordingly, this Court is deciding the remand Motion first. See Acosta-Ramirez v. Banco Popular de P.R., No. 12-1887, 2013 WL 1320411, at *2 (1st Cir. Apr. 3, 2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case."). I will address Petitioner's alternative Motion for an expedited order enforcing the Commissioner's Interim Order in a separate Report and Recommendation.

setting – it is not appropriate for school personnel to wipe [M.R.]." Unsatisfied with this response, Petitioner removed M.R. from school while she sought emergency relief in the form of a stay-put order[2] requiring the School Department to comply with M.R.'s IEP during the pendency of the due process proceeding, which she initiated on the day of the hearing on the Interim Order.

Instead of going directly to federal court for a stay-put order under 20 U.S.C. § 1415(j), on March 6, 2013, Petitioner petitioned the Commissioner for an Interim Order requiring the School Department to comply with the IEP by providing M.R. with appropriate toileting assistance. She used the procedure set out in R.I. Gen. Laws § 16-39-3.2, which provides:

> In all cases concerning children, other than cases arising solely under § 16-2-17, the commissioner of elementary and secondary education shall also have power to issue any interim orders pending a hearing as may be needed to ensure that a child receives education in accordance with applicable state and federal laws and regulations during the pendency of the matter. Hearings on these interim orders shall be conducted within five (5) working days of a request for relief and the decision shall be issued within five (5) working days of the completion of the hearing. These interim orders shall be enforceable in the superior court at the request of any interested party.

Pursuant to this statute, the Commissioner held an administrative hearing on March 13, 2013. On April 2, 2013, she granted the Petition and entered an Interim Order, which concludes that the IEP requirement that M.R's personal-care attendant must "[m]onitor hygiene in the bathroom" requires School Department staff to wipe M.R. if necessary to assure that he is clean. ECF No. 3-1, at 5, 8. The Commissioner found that the School Department's position that it is "inappropriate" to wipe M.R. in a public school setting categorically incorrect. Id. at 7. The Commissioner observed that M.R.'s health had been adversely affected by the School

---

[2] Petitioner argues vigorously that her Interim Order should not be labeled as a "stay-put." Like the Shakespearian rose, quibbling over the label does not alter its substance: Petitioner was seeking to protect M.R. by preserving the status quo and enforcing the IEP during the pendency of the due process proceeding. As will become clear below, that is the essence of a "stay-put."

3

Department's approach to toileting so that the matter could have been decided on health and safety grounds if Petitioner had presented a current physician's order. Id. at 7-8 & n.9. Lacking such evidence, she based her decision solely on an interpretation of M.R.'s federally-mandated IEP:

> [M.R.'s] IEP . . . provides a one-on-one personal care attendant who is to monitor [M.R.'s] hygiene in the bathroom . . . . [W]e take 'monitor' to mean that appropriate staff is observing [M.R.] to make sure he is dealing effectively with his bowel movements. . . . Staff must inspect [M.R.'s] buttocks after he attempts to wipe himself and if [M.R.] is not clean, staff must take steps to make him clean. If [M.R.] is physically unable to complete the job himself, staff must clean [M.R.]. If this requires wiping, staff must wipe [M.R.]. In [M.R.'s] case, this is a related health service that his IEP requires.
>
> Because [M.R.] is being denied an education in accordance with applicable state and federal law, i.e., consistent with his IEP, he is entitled to interim relief. Because our ruling herein is a final disposition of the issue, we shall issue a decision as well.

Id. at 8. Because M.R. had been removed from school since the Petition requesting the Interim Order was filed, the Commissioner also ordered compensatory educational services to make up the missed instruction. Id. at 9.

The Commissioner published the Interim Order to the parties after 5:00 p.m. on April 2, 2013. Understandably eager for M.R. to return to school as soon as possible, that night, Petitioner's counsel notified the School Department by e-mail that M.R. would return to school on April 4. The School Department's counsel responded a few hours later, stating that she needed to speak with her client. On the morning of April 3, Petitioner's counsel followed up to make sure the School Department would comply with the Interim Order; Respondent's counsel e-mailed back a short note that she was on trial. Later on April 3, Respondent's counsel e-mailed a letter to Petitioner's counsel, stating that the School Department had not had time to review the Interim Order but would be ready to comply by Friday, April 5.

4

Uncertain of the School Department's intentions, Petitioner filed her Petition to Enforce the Interim Order in the Superior Court on April 4, 2013, pursuant to R.I. Gen. Laws § 16-39-3.2. The Petition recites that it is based on M.R.'s IEP pursuant to IDEA; it seeks to enforce the requirement that the School Department provide "the related health service that is [sic] IEP requires." ECF No. 1-1, at 4 ¶ 19. Also on April 4, the School Department objected in the Superior Court that judicial enforcement was unnecessary because the "[School] District intends to fully comply with the Commissioner of Education's Order and Decision dated April 2, 2013. The District is ready, willing and able to accept the student back into the District on April 5, 2013." Resp'ts Obj. to Pet'rs Pet. to Enforce the Interim Order & Decision of the Commissioner Pursuant to R.I.G.L. §16-39-3.2, Rosenfeld v. N. Kingstown Sch. Dep't, C.A. No. PC-2013-1580 (R.I. Super. Ct. Apr. 4, 2013). The School Department promptly removed the Petition to this Court, asserting federal question jurisdiction because Petitioner's claim arises under IDEA in that it seeks to enforce a stay-put order based on M.R.'s IEP. Petitioner moves to remand the case to the Superior Court.

## II.    APPLICABLE LEGAL PRINCIPLES

Congress enacted IDEA as a comprehensive statutory scheme "to ensure that all children with disabilities have available to them a free appropriate public education ['FAPE']." 20 U.S.C. § 1400(d)(1)(A)-(B); see Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 295 (2006); Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 58 (1st Cir. 2002); Weber v. Cranston Pub. Sch. Comm., 245 F. Supp. 2d 401, 405 (D.R.I. 2003). To deliver FAPE, school districts must provide special education and related services at public expense. 20 U.S.C. § 1401(9). The tool to ensure that a child with a disability receives FAPE is the individualized educational plan set out in the IEP, the centerpiece of IDEA's education delivery system. 20 U.S.C. §§ 1401(9), 1414(d); D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 34 (1st Cir. 2012); Coventry Pub.

Sch. v. Rachel J., 893 F. Supp. 2d 322, 332 (D.R.I. 2012); James Rapp, Education Law § 10C.06[3][a][i] (Matthew Bender & Co. 2012).  IEPs create legally enforceable rights and obligations that bind the school district and the pupil for at least an entire school year. Settlegoode v. Portland Pub. Sch., 371 F.3d 503, 511 (9th Cir. 2004).  An IEP may include not only "specially designed instruction," but also "related services"[3] that are essential to enable a disabled child to receive a FAPE; "[m]onitor hygiene in the bathroom" is an example of a related service.

Congress designed IDEA as a scheme of cooperative federalism; while the substantive law regarding the rights and remedies of disabled children is dominated by federal requirements, state laws and regulations generally supply the procedural elements.  See Frazier, 276 F.3d at 63-64; Town of Burlington v. Dep't of Educ., 736 F.2d 773, 785 (1st Cir. 1984); Kevin G. ex. rel. Jo-Ann G. v. Cranston Sch. Comm., 965 F. Supp. 261, 262 (D.R.I. 1997).  The federal contours of this federal/state mélange are policed by conditioning federal education funding on compliance – states must comply with IDEA, but they have considerable leeway in fashioning the procedure to resolve disputes over the delivery of FAPE to a disabled child.  See 20 U.S.C. §1415(a), (f).  For example, if the parent (or the school district) is unsatisfied with the substance or implementation of the IEP, a due process complaint may be filed under the state administrative procedure; the procedural mechanics are left to the states, as long as they meet minimum procedural safeguards outlined in IDEA.  20 U.S.C. §§ 1415(b)(6)-(7), (f); Frazier, 276 F.3d at 63.  In Rhode Island, a state hearing officer conducts the due process hearing, subject to approval by the Commissioner.  See 20 U.S.C. § 1415(f); R.I. Bd. of Regents for Elementary

---

[3] "Related services" refers to "school health services, and developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(26)(A); 34 C.F.R. § 300.34(a).

& Secondary Educ., Regulations Governing the Educ. of Children with Disabilities §§ 300.500-521 (2010).

While the primary IDEA enforcement mechanisms are administrative, the Act permits any "aggrieved party" to file suit in state or federal court without regard to the amount in controversy, subject to exhaustion requirements; under IDEA, federal and state courts have concurrent jurisdiction. 20 U.S.C. §§ 1415(i)(2), (3)(A); see Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 54 (2005); Frazier, 276 F.3d at 59; Charlie F. ex rel. Neil F. v. Bd. of Educ., 98 F.3d 989, 993 (7th Cir. 1996). Thus, when a party pleads the IEP pursuant to IDEA as the foundation for the claim, there is federal subject matter jurisdiction and the federal forum is available if either party chooses it, either by filing in federal court or by removal of an action to federal court. See 20 U.S.C. § 1415(i)(3)(A); Warton v. New Fairfield Bd. of Educ., 125 F. Supp. 2d 22, 23 (D. Conn. 2000) (state action to enforce state's interim order to prevent removal of child from stay-put placement pending IEP due process hearing removed to federal court for injunction hearing); Moubry v. Kreb, 58 F. Supp. 2d 1041, 1045-46 (D. Minn. 1999) (petition based on alleged denial of FAPE under state and federal law removable to federal court; motion to remand denied). "This simple and direct grant of jurisdiction empowers the [federal] Court to consider all claims regarding the decisions of the [State Review Officer]." N.Y.C. Dep't of Educ. v. S.S., No. 09 Civ. 810(CM), 2010 WL 983719, at *7 (S.D.N.Y. Mar. 17, 2010); see Ross v. Framingham Sch. Comm., 44 F. Supp. 2d 104, 116 (D. Mass. 1999) (federal jurisdiction to hear claim of non-implementation of IEP initiated before state hearing officer).

One critical component of substantive federal law under IDEA is the "stay-put" requirement, which mandates that the child must remain in his current educational placement – usually whatever is prescribed in the most recent IEP – throughout the pendency of the due

process proceedings. Verhoeven v. Brunswick Sch. Comm., 207 F.3d 1, 6 (1st Cir. 1999); see 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518. This provision is critical to protect the child because the due process proceedings can be protracted. See Honig v. Doe, 484 U.S. 305, 312 (1988); N.Y.C. Dep't of Educ., 2010 WL 983719, at *6. By contrast with other provisions of IDEA, parents are not required to exhaust administrative remedies before enforcing the "stay-put," whose purpose is to "maintain . . . the status quo and ensur[e] that schools cannot exclude a disabled student or change his placement without complying with the due process requirements." CP v. Leon Cnty. Sch. Bd., 483 F.3d 1151, 1155 (11th Cir. 2007); see Cranston Sch. Dist. v. Q.D., C.A. No. 06-538ML, 2008 WL 4145980, at *13 (D.R.I. Sept. 8, 2008) (parents are not required to exhaust the administrative process before bringing suit to enforce their child's stay-put rights). The family may go straight to federal or state court for injunctive relief if the school is not complying with an administrative "stay-put." Murphy, 297 F.3d at 199; Cranston Sch. Dist., 2008 WL 4145980 at *13; Bd. of Educ. v. Engwiller, 170 F. Supp. 2d 410, 413 (S.D.N.Y. 2001) (parents permitted to sue in federal court for injunction to enforce "stay-put" and challenge interim state order purporting to alter it).

The Rhode Island General Assembly enacted R.I. Gen. Laws § 16-39-3.2 to create an administrative procedure to resolve education emergencies under both state and federal law, including, with respect to federal law, to enforce the federal "stay-put" requirement.[4] In the matter of Student A. Doe, No. 04-08, at 3 (R.I. Commissioner of Education Jan. 29, 2008) (interim order statute creates Commissioner's "authority to enter 'stay-put' order pending due process hearings"); In re: John C.L. Doe, No. 32-97, at 1, 5 (R.I. Commissioner of Education

---

[4] The administrative procedure created by R.I. Gen. Laws § 16-39-3.2 allows the Commissioner to examine the evidence and enter an interim order providing expedited relief, thereby engaging those with specialized knowledge, the education professionals, at the center of the decision-making process, as contemplated by IDEA. Frazier, 276 F.3d at 60.

Oct. 21, 1997) (purpose of interim order to maintain status quo placement under 20 U.S.C. § 1415(j)).  Pursuant to R.I. Gen. Laws § 16-39-3.2, the Commissioner has the "power to issue any interim orders pending a hearing as may be needed to ensure that a child receives education in accordance with applicable state and federal laws and regulations during the pendency of the matter."  Consistent with the federal requirement that a "stay-put" enforcement proceeding is not contingent on further administrative exhaustion, these interim orders are expressly enforceable in the Superior Court at the request of any interested party.[5]  R.I. Gen. Laws § 16-39-3.2; see Verhoeven, 207 F.3d at 44 (parents filed federal action for injunction challenging hearing officer's stay-put order pending outcome of due process proceeding).  The Commissioner herself interprets[6] R.I. Gen. Laws § 16-39-3.2 as creating a procedure to implement the "stay-put" principle embedded in the IDEA statutory scheme, among other purposes.  See In the matter of Student A. Doe, at 3; In re: John C.L. Doe, at 1, 5; see also John Doe v. A Rhode Island School District, No. 30-96, at 6 (R.I. Commissioner of Education Dec. 24, 1996) (authority created by R.I. Gen. Laws § 16-39-3.2 includes issuance of interim orders in special education matters to ensure that child remains in current educational placement pending due process hearing).

---

[5] It should be noted that R.I. Gen. Laws § 16-39-3.2's provision that enforcement proceedings may be initiated in the Superior Court does not divest the federal court of subject matter jurisdiction.  When the General Assembly specifies that a cause of action may be brought in the Superior Court, the claim nevertheless may be brought in the federal court as long as there is federal subject matter jurisdiction.  See, e.g., Burns v. Conley, 526 F. Supp. 2d 235, 238 n.7 (D.R.I. 2007) (Superior Court has jurisdiction over petitions related to tax sales pursuant to R.I. Gen. Laws § 44-9-45, but mortgagee could remove pursuant to 12 U.S.C. § 1452(f)); Ne. Land Servs., Ltd. v. Schulke, 988 F. Supp. 54, 56-57 (D.R.I. 1997) (although R.I. Gen Laws § 6-41-2 provides that suit for injunctive relief for misappropriation of trade secrets may be brought in Superior Court, case may be removed to federal court based on diversity).

[6] The Commissioner's interpretation of R.I. Gen. Laws § 16-39-3.2 as providing a procedure to enforce substantive federal law protecting children's right to FAPE is subject to this Court's deference.  Antilles Cement Corp. v. Acevedo Vila, 408 F.3d 41, 51 (1st Cir. 2005) (administrative interpretation given to an act by a state agency in charge of enforcing it deserves great weight and deference); James S. v. Town of Lincoln, No. CA 11-236 ML, 2012 WL 3645339, at *5 (D.R.I. Aug. 23, 2012) (court must accord deference to the state agency's application of its specialized knowledge in IDEA cases); see also Town of Richmond v. R.I. Dep't of Envtl. Mgmt., 941 A.2d 151, 157-58 (R.I. 2008) (administrative agency may develop its own dispute resolution procedures, and "an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency").

## III.   ANALYSIS

Petitioner contends that the Interim Order was entered pursuant to an administrative procedure created by a state statute so that the suit to enforce it should be remanded to Superior Court because no federal question exists.[7] Whether she is correct depends on basic principles of federal law governing the jurisdiction of federal courts. Removal to federal court of an action commenced in state court is proper when the action could have been commenced in federal court under the court's original jurisdiction. 28 U.S.C. § 1441(a). The party removing the case has the burden to prove that federal jurisdiction exists. Calderon-Serra v. Wilmington Trust Co., No. 11-2449, 2013 WL 1715518, at *4 (1st Cir. Apr. 22, 2013). In light of this burden, and of the important federalism concerns at play in considering removal jurisdiction, any ambiguity as to the source of law relied upon is resolved against removal. Rossello-Gonzalez v. Calderon–Serra, 398 F.3d 1, 11 (1st Cir. 2004).

District courts have original jurisdiction of all civil actions "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law when federal law creates the cause of action asserted. Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013); Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 748 (2012). Here, Petitioner unquestionably could have brought her Petition to enforce M.R.'s stay-put under IDEA, 20 U.S.C. § 1414(j), through an action in federal court under this Court's original jurisdiction. See Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 115 (1st Cir. 2003) (plaintiffs

---

[7] Petitioner also argues that the Interim Order arises under state laws dealing with health and safety, rather than under federal law, which creates the right to FAPE based on an IEP enforceable through a stay-put order. This interpretation of her Petition is belied by its terms, as she expressly relied on M.R.'s IEP as the basis for the relief. Moreover, the Interim Order is expressly grounded on the IEP under IDEA; the Commissioner notes that she could have considered the matter on health and safely grounds, but the evidence presented by Petitioner was insufficient. ECF No. 3-1, at 8 n.9 (if doctor's note was current, could have decided matter under health regulations). Had Petitioner framed her claim as one based on state health and safety grounds and presented evidence to support such a claim and had the Commissioner based her Interim Order on state health and safety regulations, instead of on the IEP under IDEA, the availability of federal jurisdiction to enforce the Interim Order might be different. That, however, is not this case.

can bring suit to enforce IEP in federal court when the school district does not challenge administrative order, but does not comply with it); Moubry, 58 F. Supp. 2d at 1045-46 (federal question jurisdiction exists when plaintiff simultaneously brings federal cause of action under IDEA and a state cause of action).  Instead, in seeking to enforce M.R.'s stay-put right under IDEA, Petitioner opted not to seek an injunction from the federal court under 20 U.S.C. § 1415(j), but rather invoked the administrative procedure created by R.I. Gen. Laws § 16-39-3.2, which was expressly created by the General Assembly to enforce substantive federal law, as well as state law, and which the Commissioner expressly used in this instance to enforce M.R.'s stay-put right based on his IEP under IDEA.  Once the issue of enforcement of the stay-put in the Interim Order ripened, Petitioner again had the alternative to go to the Superior Court, which she chose to do, or to file an action in federal court based on federal subject matter jurisdiction arising from IDEA.  Nieves-Marquez, 353 F.3d at 115; Warton, 125 F. Supp. 2d at 23.

      Whether Petitioner went directly to federal court as she could have done or opted to use a state administrative procedure to procure the Interim Order, is a difference without distinction, as the Petition itself makes clear.  See Baker v. D.C. Pub. Sch., 720 F. Supp. 2d 77, 80-81 (D.D.C. 2010) (suit characterized as one for breach of contract arises under IDEA where plaintiff asserted that entitlement to fees arose under IDEA; motion to remand denied); Bd. of Educ. v. Johnson, 543 F. Supp. 2d 351, 355-56 (D. Del. 2008) (despite claims based on state law, holding appealed from rests on IDEA; federal subject matter jurisdiction is available); Warton, 125 F. Supp. 2d at 23 (administrative interim stay-put order entered by state official may be enforced in federal court).  In either instance, the dispute arises under federal law and federal jurisdiction is available.

Cases with similar facts support this conclusion. In Still v. DeBuono, 927 F. Supp. 125 (S.D.N.Y. 1996), the state commissioner of health filed an action in state court pursuant to state law challenging an order requiring reimbursement to the parents of an autistic child. After the defendant removed the case to federal court, the court refused to remand because the interpretation of IDEA was at the root of the litigation and the complaint referenced specifically that the reimbursement was provided pursuant to IDEA. Id. at 128-29. Likewise, in B.W. v. Durham Public Schools, No. 1:09CV970, 2010 WL 2869558, at *8-9 (M.D.N.C. July 20, 2010), the plaintiff brought suit under a state statute that permitted him to bring a civil action in state court for violations of IDEA. The Court rejected the plaintiff's contention that it lacked subject matter jurisdiction, reasoning that the complaint dealt with IDEA compliance. Id.; see also Warton, 125 F. Supp. 2d at 23 (state interim order to protect child's stay-put right enforceable in federal court).

Even if this Court were to accept Petitioner's contention that this case is based solely on a state law cause of action, federal jurisdiction is still available. As the Supreme Court recently clarified, there are cases that present the thornier question whether "arising under" jurisdiction pursuant to 28 U.S.C § 1331 exists when a plaintiff sues solely on a state law cause of action that invokes a federal right. In such circumstances, federal jurisdiction over the subject matter will lie if the federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Gunn, 133 S. Ct. at 1065. Application of this test to the Petition confirms the existence of federal jurisdiction.

First, resolution of the federal IEP question is "necessarily raised." Under R.I. Gen. Laws § 16-39-3.2, the Commissioner has the power to issue interim orders to ensure a child

receives an education "in accordance with applicable state and federal laws" and the sole basis for this Interim Order is federal, not state law.  Second, the federal issue is "actually disputed:" the Petition filed in Superior Court (and removed to this Court) specifically invokes IDEA, alleges a violation of M.R.'s IEP, and quotes extensively from the Commissioner's Interim Order interpreting the requirements of M.R.'s IEP.  The third prong, the substantiality of the federal question, is readily satisfied by the finding of Congress that it "is in the national interest that the Federal Government have a supporting role in assisting State and local efforts to educate children with disabilities in order to improve results for such children and to ensure equal protection of the law."  20 U.S.C. § 1400(6).  The IEP, which forms the basis for M.R.'s suit, is the most critical aspect of FAPE and the centerpiece of IDEA's statutory scheme.  See Coventry Pub. Sch., 893 F. Supp. 2d at 332.  The fourth and final prong of the Gunn test, that this case is capable of resolution in federal court without disrupting the federal-state balance approved by Congress, is readily satisfied by the ability of this Court to enforce the stay-put provisions of IDEA by entering an injunction to enforce the Interim Order.  See Town of Burlington, 736 F.2d at 783-84 (IDEA based on cooperative federalism between states and the federal government, which is the "central hallmark of the Act").

    Petitioner's argument for remand is based principally on Honeoye Central School District v. S.V., No. 09-6407, 2011 U.S. Dist. LEXIS 7617, at *9-11 (W.D.N.Y. Jan. 26, 2011).  This reliance is misplaced.  Honeoye Central involved only allegations of breach of contract under state law because the case arose from a non-IDEA settlement agreement between the parents and the school district.  The federal court granted the school district's motion to remand, reasoning that the underlying lawsuit did not rely on IDEA, nor would an adjudication of the claim require

application of IDEA; the case was not about the student's right to FAPE, but rather about whether the contract between the school district and student was enforceable. Id. at *11.

Section 16-39-3.2 embodies IDEA's preference for cooperative federalism. It resides in harmony with IDEA by creating an administrative procedure that allows the state educational expert, the Commissioner, to bring her expertise to bear on the stay-put analysis required by IDEA. When her Interim Order is a stay-put to enforce the IEP under IDEA to protect the child for the duration of the IDEA due process proceeding, which is the circumstance presented here, an action to enforce the School Department's compliance with the Interim Order arises under IDEA and may be brought in the federal court in the first instance. See Nieves-Marquez, 353 F.3d at 115. Federal subject matter jurisdiction is available to entertain the same matter when it was filed in the Superior Court and removed here. Therefore, the Motion to remand must be denied.[8]

## IV. CONCLUSION

I recommend that the Petitioner's Motion for Remand (ECF No. 2) be DENIED. This Report and Recommendation addresses only the issue of the Court's jurisdiction over the subject matter of the Petition. The Court will issue a separate decision on Petitioner's alternative Motion seeking to enforce the Interim Order.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its service. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the

---

[8] The Court adds a coda. Not every interim order under R.I. Gen. Laws § 16-39-3.2 will be enforceable in federal court. Section 16-39-3.2 creates a procedure to use when there is an urgent need for an interim order to protect the rights of a student under either state or federal law. This emergency arose under federal law; another interim order may be based entirely on state law. Whether an interim order under § 16-39-3.2 may be enforced in federal court will require a case by case inquiry.

right to review by the District Court and the right to appeal the District Court's decision.  See

United States v. Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor

Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 30, 2013